UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| AUGUSTUS GAINES, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 1:17-cv-04711-JRS-MPB |
| ) | |
| JOHN LAYTON, ) | |
| ) | |
| Defendant. ) | |

**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT
AND DIRECTING ENTRY OF FINAL JUDGMENT**

Plaintiff Augustus Gaines brought this lawsuit alleging constitutional violations during his pretrial detention at Marion County Jail. Specifically, Mr. Gaines claims that defendant John Layton, the former elected Sheriff of Marion County, placed him in a second-tier cell in retaliation for filing grievances against jail staff and to discriminate against him for his disability, race, or religion. Shortly after receiving this bunk assignment, Mr. Gaines fell descending the stairs leading to his cell and became injured.

Mr. Layton has filed a motion for summary judgment, seeking the dismissal of all claims. He presents evidence that he was not personally involved in the decision to place Mr. Gaines in a second-tier cell and that the Marion County Sheriff's Office ("MCSO") does not have a policy or custom of making housing assignments for retaliatory or discriminatory purposes. As such, Mr. Layton argues that he is not liable, in his individual capacity or in his official capacity as Marion County Sheriff, for Mr. Gaines' injuries. For the reasons explained in more detail below, the motion for summary judgment is **GRANTED** and final judgment shall now issue in favor of Mr. Layton.

# I.
# SUMMARY JUDGMENT STANDARD

A motion for summary judgment asks the Court to find that the movant is entitled to judgment as a matter of law because there is no genuine dispute as to any material fact. *See* Fed. R. Civ. P. 56(a). A party must support any asserted disputed or undisputed fact by citing to specific portions of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). A party may also support a fact by showing that the materials cited by an adverse party do not establish the absence or presence of a genuine dispute or that the adverse party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(B). Affidavits or declarations must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on matters stated. Fed. R. Civ. P. 56(c)(4). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

In deciding a motion for summary judgment, the only disputed facts that matter are material ones—those that might affect the outcome of the suit under the governing law. *Williams v. Brooks*, 809 F.3d 936, 941-42 (7th Cir. 2016). "A genuine dispute as to any material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Daugherty v. Page*, 906 F.3d 606, 609−10 (7th Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Skiba v. Illinois Cent. R.R. Co.*, 884 F.3d 708, 717 (7th Cir. 2018). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the factfinder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). The Court need only consider the cited materials and need not "scour the record" for evidence that is potentially relevant to the summary judgment motion. *Grant v. Trustees of Ind.*

*Univ.*, 870 F.3d 562, 573−74 (7th Cir. 2017) (quotation marks omitted); *see also* Fed. R. Civ. P. 56(c)(3).

## II.
## BACKGROUND

**A. Mr. Gaines' Accident at Marion County Jail**

Mr. Gaines was diagnosed with osteochondritis dissecans in 1996. Dkt. 114-2, p. 13. The condition is a degenerative bone disease that causes pain in the knees and slowly degrades the ability to walk or move about without assistance. *Id.* at 15, 16. By 2015, Mr. Gaines occasionally needed a cane to help him walk. *Id.* at 16.

Mr. Gaines was arrested for possession of a firearm by a serious violent felon in May 2016. Dkt. 114-4, p. 19. He posted bond in August 2016, but was arrested again in November 2016, following a pretrial release violation. *Id.* at 20.

When he was booked into the jail following his pretrial release violation, Mr. Gaines received a medical screening from an unidentified nurse. *Id.* at 38. He informed the nurse about his degenerative bone disease and difficulty walking upright on his own strength and told her that he needed to be placed in a bottom floor cell. *Id.* at 39, 40. According to Mr. Gaines, the nurse told him to stop complaining and faulted him for "trying to tell [her] what to do." *Id.* at 40. According to Mr. Gaines, the nurse said, "the warden didn't care to deal with the medical issues because of [his] past." *Id.* at 47. Mr. Gaines assumed the nurse was referring to a past grievance he had filed against her in August 2016. *Id.* at 42, 47. Mr. Gaines had also filed grievances against other members of the jail staff in May 2016, July 2016, and August 2016. *Id.* at 42, 43.

On December 6, 2016, Mr. Gaines was transferred from a suicide prevention block to cell block 2P. *Id.* at 17, 18. He was brought to cell block 2P in a wheelchair by deputies. *Id.* at 28. Upon his arrival, the deputies informed him that his cell was on an upper floor. *Id.* He told the

deputies that this would be a problem because of his disability. *Id.* The deputies reiterated where he was assigned and told him that he would have to figure out how to get up to the second floor. *Id.* Mr. Gaines was not allowed to keep his wheelchair, nor did he possess a walker or a cane at that time. *Id.* at 29, 32, 33.

After the deputies left, two or three other inmates helped Mr. Gaines climb the stairs to his cell. *Id.* at 30. The stairs consisted of 12 to 14 concrete and steel steps with metal railings on both sides. *Id.*

Sometime later, Mr. Gaines was "called for medication," meaning it was time to receive his seizure medication. *Id.* at 48. He was the only inmate on the upper floor who was receiving medication, and he began to descend the stairs alone. *Id.* at 50. He was less than halfway down the stairs when his back started "popping" and his legs gave out. *Id.* at 50-51. He fell head-first, hitting his head, back and rear end on the stairs. *Id.* at 51. He briefly lost consciousness and awoke at the bottom of the stairs in "a lot of pain." *Id.* at 50. He was taken to Eskenazi Hospital and diagnosed with a left knee contusion, a possible fracture, unspecified dorsalgia, and pain in his right shoulder and upper back. *Id.* at 54, 59. He received a pain reliever, and returned to the jail on December 7. *Id.* at 69.

### B. Defendant John Layton

Mr. Gaines named Sheriff John Layton as a defendant after initially naming a non-existent "Warden" of the Marion County Jail. Dkt. 95. In December 2016, Mr. Layton was the elected Marion County Sheriff. Dkt. 114-3, p 1. He was first elected to this office in November 2010 and was re-elected in 2014. *Id.* Accordingly, Mr. Layton was the Marion County Sheriff during the time period relevant to this action.

As Sheriff, Mr. Layton had the responsibility of leading MCSO, which consisted of approximately 1,000 employees—703 sworn deputies and 300 civilians. *Id.* Additionally, he was responsible for the three Marion County Jails, which house an average daily population of 2,500 inmates. *Id.* MCSO is divided into six Divisions: Jail, Criminal, Judicial Enforcement, Reserve, Administrative, and Communications. *Id.* Mr. Layton was also responsible for managing an annual budget of over $100 million. *Id.*

As Sheriff, Mr. Layton's time was devoted to leadership and managerial duties. *Id.* He did not perform any shiftwork or engage in any of the traditional law enforcement and security functions that detention deputies and jail staff perform at any of the Marion County jails at any period during this tenure. *Id.* Further, Mr. Layton never had any communication or interaction with Mr. Gaines on or before December 2016. *Id.*

### C. Classification Policies at Marion County Jail

MCSO Jail Policy No. JP2-1 requires that each inmate be evaluated and classified based on mental or emotional stability, medical status, escape history, history of assaultive behavior, age, and sex. Dkt. 114-4, pp. 1, 4-8. MCSO Jail Policy No. JP2-2 requires inmates to be classified using an objective, standardized classification system, taking into consideration medical issues that necessitate special housing or supervision. *Id.* at 2, 8-14. MCSO Jail Policy No. JP2-5 requires that jail staff determine the best housing assignment for each inmate based on, among other considerations, special medical or mental health problems. *Id.* at 2, 15-17.

MCSO policies also ensure that a grievance process is available to inmates. Dkt. 114 at 3. Jail staff and deputies are trained to respect the legal rights of inmates, including their free speech rights. Dkt. 114 at 2. There is no jail policy of retaliating against inmates for filing grievances or exercising the free speech rights they retain even as inmates. Dkt. 114 at 2.

## III.
## DISCUSSION

### A. Legal Standards for Retaliation and Equal Protection

Mr. Gaines alleges that Mr. Layton engaged in unlawful retaliation in violation of the First Amendment and unlawful discrimination in violation of the Fourteenth Amendment when he placed Mr. Gaines in a second-tier cell during his pretrial detention at Marion County Jail.

To prevail on a First Amendment retaliation claim, an inmate must show that (1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the defendant's decision to take the retaliatory action. *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009). Although jail grievance procedures are not mandated by the First Amendment, and inmates have no due process interest in having their grievances heard by jail staff, *see Owens v. Hinsley*, 635 F.3d 950, 953-54 (7th Cir. 2011), "[c]onduct that does not independently violate the Constitution can form the basis for a retaliation claim, if that conduct is done with an improper, retaliatory motive." *Hoskins v. Lenear*, 385 F.3d 372, 375 (7th Cir. 2005). Thus, jail staff may not retaliate against an inmate for filing grievances. *Bridges*, 557 F.3d at 552.

Inmates are protected under the Equal Protection Clause of the Fourteenth Amendment from invidious discrimination based on membership in a protected class. *Lisle v. Welborn*, 933 F.3d 705, 720 (7th Cir. 2019). To survive a defendant's motion for summary judgment, the inmate must produce evidence, the totality of which "would permit a reasonable factfinder to conclude that [the inmate's] race, ethnicity, sex, religion, or other proscribed factor caused" the inmate to suffer adverse treatment. *Id.*

### B. Individual Capacity Claims against Mr. Layton

Mr. Layton argues that he is not liable for retaliation or discrimination against Mr. Gaines because he was not personally involved in the decision to place Mr. Gaines in a second-tier cell. "Individual liability under § 1983… requires personal involvement in the alleged constitutional deprivation." *Colbert v. City of Chicago*, 851 F.3d 649, 657 (7th Cir. 2017) (internal quotation omitted) (citing *Wolf-Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir. 1983) ("Section 1983 creates a cause of action based on personal liability and predicated upon fault. An individual cannot be held liable in a § 1983 action unless he caused or participated in an alleged constitutional deprivation.... A causal connection, or an affirmative link, between the misconduct complained of and the official sued is necessary.")).

The uncontradicted evidence shows that Mr. Layton was not responsible for the decision to place Mr. Gaines in a second-tier cell. As the elected sheriff, Mr. Layton's time was devoted to the managerial and leadership activities involved in operating MCSO—an organization with over 1,000 employees and an annual budget of $100 million. He did not order the cell assignments of individual inmates. *See* Dkt. 114-3.

Mr. Gaines' testimony that a nurse told him that the "warden" was unconcerned with his medical issues as they pertained to his cell assignment does not create a genuine dispute of material fact. The Marion County Jail is not run by a "warden," and it is not clear that the nurse was referring to Mr. Layton, rather than the jail commander, the deputy chief of jail operations, or some other jail official, when she made that comment. Also, taken on its face, the statement indicates inaction rather than the required personal involvement by the "warden." Furthermore, a party may only oppose a motion for summary judgment with statements that would be admissible as evidence at trial. *See* Fed. R. Civ. P. 56(c)(1)(B). The unidentified nurse's hearsay about statements made by

7

the "warden" would not be admissible at trial against Mr. Layton in his individual capacity. *See generally*, Fed. R. Evid. 802, 803, and 804 (rule against hearsay and its exceptions).

Mr. Gaines' other argument, that Mr. Layton is "responsible for everything that goes on at the Marion County Jail because he is in direct supervision of the Jail," *see* dkt. 124, p. 3, is unpersuasive. "The doctrine of *respondeat superior* cannot be used to hold a supervisor liable for conduct of a subordinate that violates a plaintiff's constitutional rights." *Chavez v. Illinois State Police*, 251 F.3d 612, 651 (7th Cir. 2001). The mere fact that Mr. Layton was the chief executive of MCSO does not make him individually liable for all unlawful conduct that occurred at the Marion County Jail during his tenure as Sheriff. Accordingly, the motion for summary judgement is **GRANTED** in favor of Mr. Layton in his individual capacity.

### C. Official Capacity Claims against Mr. Layton

Mr. Layton argues that he is not liable in his official capacity for retaliation or discrimination against Mr. Gaines because MCSO did not maintain a policy or custom of making cell assignments for retaliatory or discriminatory purposes.

Naming an individual in his official capacity is another way of pleading an action against the individual's employer. *See Sow v. Fortville Police Dept.*, 636 F.3d 293, 300 (7th Cir. 2011) (suing an individual in his official capacity "is another way of pleading an action against an entity of which the officer is an agent."). In this case, Mr. Layton's employer was MCSO, and Mr. Gaines' official capacity claim against Mr. Layton is therefore a claim against MCSO. "[M]unicipal governments [including counties] cannot be held liable for damages under 42 U.S.C. § 1983 on a theory of *respondeat superior* for constitutional violations committed by their employees. They can, however, be held liable for unconstitutional municipal policies or customs." *Simpson v. Brown*

*County*, 860 F.3d 1001, 1005-6 (7th Cir. 2017) *(citing Monell v. Dep't of Social Services*, 436 U.S. 658, 690-91 (1978)).

MCSO has multiple written policies for inmate cell assignments. One policy requires jail staff to make cell assignments based on the inmates' mental or emotional stability, medical status, escape history, history of assaultive behavior, age, and sex. Dkt. 114-4, pp. 1, 4-8. Another policy requires jail staff to make cell assignments based on an objective, standardized classification system, which takes into consideration medical issues that necessitate special housing or supervision. *Id.* at 2, 9-14. A third policy requires jail staff to make the best cell assignments based on, among other considerations, the inmates' special medical or mental health problems. *Id.* at 2, 15-17. There is no jail policy of retaliating against inmates for filing grievances or exercising the free speech rights they retain as inmates. *Id.* at 2.

These policies notwithstanding, Mr. Gaines argues that "these rules are often never followed and, in [this instance], was disregarded completely." Dkt. 124, p. 3. This argument is unpersuasive. A plaintiff proceeding on an unlawful custom claim must show numerous and widespread instances of constitutional violations. *Grieveson v. Anderson*, 538 F.3d 763, 774 (7th Cir. 2008) (holding that 4 incidents over approximately 11 months involving only the plaintiff was insufficient to show a widespread practice or custom). Even if Mr. Gaines suffered retaliation or discrimination in this instance, he has not presented evidence of widespread instances of similar conduct such that Mr. Layton could be held liable in his official capacity. Accordingly, the motion for summary judgment is **GRANTED** in favor of Mr. Layton in his official capacity.

## IV.
## CONCLUSION

For the reasons explained above, the motion for summary judgment, dkt. [113], is **GRANTED**. Mr. Gaines' motion to appoint counsel to assist him with trial, dkt. [125], is **DENIED AS MOOT**. Final Judgment in accordance with this Order shall now issue.

    **SO ORDERED**.

Date:  10/19/2020

_____
JAMES R. SWEENEY II, JUDGE
United States District Court
Southern District of Indiana

Distribution:

AUGUSTUS GAINES
104530
PLAINFIELD - CF
PLAINFIELD CORRECTIONAL FACILITY
Electronic Service Participant – Court Only

Carol A. Dillon
BLEEKE DILLON CRANDALL, P.C.
carol@bleekedilloncrandall.com

Daniyal M. Habib
OFFICE OF CORPORATION COUNSEL
daniyal.habib@indy.gov

Anne Celeste Harrigan
OFFICE OF CORPORATION COUNSEL
anne.harrigan@indy.gov

Offer Korin
KATZ  KORIN CUNNINGHAM, P.C.
okorin@kkclegal.com

Nathan Aaron Pagryzinski
KIGHTLINGER & GRAY, LLP
npagryzinski@k-glaw.com